ABBIE I. HENRY et al., respondents,

*v.*

WILLIAM M. SIMANTON et al., appellants.

[Submitted December 7th, 1903.   Decided April 8th, 1905.]

"An act for winding up voluntary associations and associations with partnership liabilities" (*P. L. of 1899 p. 485*) does not clothe the chancellor with power to enforce the payment of debts contracted by such associations, by an assessment against the members thereof, in a case where by a previous proceeding in chancery the business in the course of which such debts were contracted had been wound up and the property and assets of such association got in and distributed.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Reed, whose conclusions are reported in *64 N. J. Eq. (19 Dick.) 572.*

· *Mr. Sylvester C. Smith* and *Mr. William H. Morrow,* for the appellants.

*Mr. Martin Wyckoff,* for the respondents.

The opinion of the court was delivered by

GARRISON, J.

Musconetcong Grange, No. 114, a voluntary association, was instituted a subordinate grange of the Patrons of Husbandry in the month of February, 1893, and during that year carried on a merchandise business of some sort under the firm name of W. Fleming & Company.  In January, 1894, the persons so associated elected trustees and filed a certificate of incorporation under the provisions of "An act to enable granges of the order of patrons of husbandry to incorporate" (*2 Gen. Stat. p. 1614*),

after which the same business was continued under the name of the Asbury Mercantile Association.

The complainants sue as creditors of the business so conducted. The circumstance that the debts of some of the complainants arose before and some after the incorporation is not a matter of moment, in view of the fact that the statute conferred no authority to engage in the business in the course of which the complainants' debts were contracted, so that the legal rights of the complainants against the associated members as *quasi*-partners were the same after as before the incorporation. The defendants are or were members of the association before and after its incorporation.

In 1897, upon a bill filed by one of the said trustees, the business so carried on by the incorporated grange under the name of the Asbury Mercantile Association was wound up, and a receiver appointed by the court of chancery, who got in its credits, sold its property, distributed its assets and was finally discharged, after which the business was not resumed.

In 1899 the legislature passed the statute under which the present bill is exhibited, the significant prayer of which is for the enforcement of the payment of the complainants' debts against the members of the association, under the provisions of the sixth section of this act, viz., by an assessment against them, to be made by the decree of the chancellor.

The procedure authorized by this section of the statute of 1899 is the one feature added by it to the proceeding under which the business of the same association was previously wound up, and is the only particular in which the later statute is of any remedial benefit to the complainants. The injunction and receivership authorized by the later act are mere repetitions of the previous proceeding, and are obviously futile where there is no business to be enjoined and no property or assets to be collected. Unless, therefore, this added provision of the statute of 1899 is available to the complainants, they can take nothing by their bill.

The answer of the defendants expressly challenged the jurisdiction of the court, in view of the foregoing considerations, and presents, therefore, the question whether the statute of 1899

applies to an association, the business of which had already been wound up, its tangible property sold and all its assets distributed.

The conclusion I have reached is that the statute does not contemplate such a situation, and is, from its terms, incapable of being applied to it.

The question is one of construction. The propriety of the earlier proceeding in the court of chancery is not in issue, but the actual situation created by that proceeding has to be dealt with in passing upon the applicability of the later legislation to the situation so brought about. The situation, as has been shown, was that the business in the course of which the complainants' debts were contracted had been entirely wound up, and its assets distributed, leaving the creditors, notwithstanding the incorporation of the association, free to proceed at law against the associated members for any debts for which they were legally liable. The statute in question, by its sixth section, authorizes the chancellor to assess against the members of the association to which it applies the sums that otherwise would have been and in the present case still are, recoverable by proceedings at law. By the terms of the statute this authority is conferred upon the chancellor as ancillary to the winding up of an insolvent business and the distribution of its assets, and in this connection alone does it appear as an expression of the legislative will. This is clearly shown, not only by the title of the act and by its first enacting clause, but also by the sixth section itself, by which the authority of the chancellor to assess the members of the association is made expressly to depend upon a condition that can exist only when, by the report of a receiver appointed in the cause, it appears that the assets of the association are insufficient to pay its debts and the expenses of winding it up. The scheme of the statute, therefore, is that the authority to assess in chancery the members of a voluntary association for the debts of the concern shall be exercised in the course of a proceeding in which the tangible property and other assets of the association are being administered.

As ancillary to such an administration, this statute, as a whole, may be sustained. But to ascribe to the legislature the intention to clothe the court of chancery with authority to im-

pose an assessment as an isolated power divorced from any remedial proceeding that was within its jurisdiction would be to impute to the legislature the purpose of investing a court of equity with jurisdiction over purely legal rights, with respect to which the remedy at law was both adequate and complete. Such a construction is never favored, and in the present case is neither the necessary nor the natural force of the language employed.

The act, in its entirety, is incapable of any practical application to the present association because of the previous administration of its assets. The appointment of a receiver and the issuance of an injunction are palpably futile and serve only to impart a color of jurisdiction to the actual remedy sought by the complainants, which is the enforcement in equity of their legal rights against the defendants.

This power, as has been shown, has not been conferred upon the chancellor as an isolated jurisdiction, which it would be if exercised in the present case.

The court of chancery being, therefore, without authority to grant the only prayer of the complainants' bill that was of a remedial nature, the bill itself should have been dismissed.

To this end the decree brought up by this appeal is reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, DIXON, GARRISON, FORT, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY—10.